UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

RYAN MALLARD,                         )
                                      )
            Plaintiff,                )
                                      )
      v.                              )       CIVIL ACTION
                                      )       NO. 17-12422-WGY
ANDREW SAUL,                          )
Commissioner of the Social           )
Security Administration              )
                                      )
            Defendant.                )
                                      )

YOUNG, D.J.                                   December 10, 2019

### MEMORANDUM OF DECISION

This is an appeal of the final decision of the Commissioner
of the Social Security Administration (the "Commissioner")
denying an application for Social Security disability insurance
benefits.  Plaintiff Ryan Mallard ("Mallard") appeals the denial
on the grounds that it is not supported by substantial evidence
under the Social Security Act, 42 U.S.C. § 405(g).  Compl., ECF
No. 1; Mem. Supp. Pl.'s Mot. Reverse Commissioner's Decision
("Pl.'s Mem.") 5, ECF No. 22.

Pending before this Court are Mallard's motion to reverse
and the Commissioner's motion to affirm the Commissioner's final
decision.  Pl.'s Mot. Reverse Commissioner's Decision ("Pl.'s
Mot."), ECF No. 21; Def.'s Mot. Affirm Decision Commissioner

("Def.'s Mot."), ECF No. 24; Mem. Supp. Def.'s Mot. Affirm Commissioner's Decision ("Def.'s Mem."), ECF No. 25. For the reasons stated below, this Court DENIED the Commissioner's motion to affirm the decision and remanded the case for further proceedings. Order, ECF No. 30.

## I. INTRODUCTION

Mallard argues that the Social Security hearing officer's decision denying his application for benefits, which the Appeals Council's denial of review made final, see Administrative R., Notice Appeals Council Action 1, ECF No. 19-2, is not supported by substantial evidence. Pl.'s Mem. 5. Mallard argues that the hearing officer failed (1) to consider important evidence of Mallard's mental health conditions; (2) to accord proper weight to the opinion of his treating physician, instead giving improper weight to his non-treating physicians; (3) to consider Mallard's own testimony; (4) to consider evidence regarding challenges associated with commuting; and (5) fully to consider the vocational expert's testimony. Id. at 7-11.

### A. Procedural History

On July 6, 2016, Mallard applied for Social Security disability insurance benefits, alleging that he became disabled on July 23, 2015. Administrative R., Ex. 2, Documents Administrative Process, ALJ Hearing Decision ("Hearing Decision") 1, ECF No. 19-2; see also Administrative R., Ex. 1D,

Application Summary Disability Insurance Benefits ("Application Summary") 1, ECF No. 19-5. The Social Security hearing officer initially denied Mallard's application on August 30, 2016, and then again upon reconsideration on December 6, 2016. Hearing Decision 1. On Mallard's request for a hearing, the hearing officer subsequently held a video hearing pursuant to section 404.936(c) of title 20 of Code of Federal Regulations on June 1, 2017. Id. Mallard, represented by counsel Robert L. Noa, appeared and testified at the hearing. Id.; Administrative R., Tr. Oral Hr'g 3, ECF No. 19-2. Michael Laraia, a vocational expert, also testified at the hearing. Hearing Decision 1; Tr. Oral Hr'g 3-4.

On August 21, 2017, the hearing officer denied Mallard's claim for disability insurance benefits at step five of the sequential evaluation process, finding that Mallard retained the residual functional capacity ("RFC") to perform jobs that exist in significant numbers in the national economy. Hearing Decision 17-18. On October 3, 2017, the Appeals Council denied Mallard's request for review, AC Denial 1, rendering that decision final and ripe for judicial review, see 42 U.S.C. § 405(g).

On December 8, 2017, Mallard filed a complaint with this Court against Nancy A. Berryhill,[1] Acting Commissioner of the Social Security Administration. Compl. On May 8, 2018, after a hearing, this Court denied the Commissioner's motion to dismiss for failure to state a claim. Electronic Clerk's Notes, ECF No. 15; Def.'s Mot. Dismiss, ECF No. 9.

On June 17, 2019, Mallard moved for an order reversing the Commissioner's decision. ECF No. 21. On July 29, 2019, the Commissioner moved to affirm the Commissioner's decision. ECF No. 24. This Court heard oral argument on these motions on September 24, 2019 and remanded the case for further proceedings. Electronic Clerk's Notes, ECF No. 29; Order, ECF No. 30. This opinion explains that decision.

## B. Factual Background

### 1. Education and Occupational History

Mallard was born on March 5, 1979 and was 36 years old on July 23, 2015, the alleged onset date of his disability. Hearing Decision 16; see also Application Summary 1. He attended some of high school but did not complete his high

---

[1] Andrew Saul is now the Commissioner of Social Security and is automatically substituted as a party under rule 25(d) of the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 25(d) ("The officer's successor is automatically substituted as a party.").

school education.  Administrative R., Ex. 7F, Office Treatment Records 3, ECF No. 19-9.

Mallard has previously worked as a security guard and as a sign installer.  Hearing Decision 16; see also Administrative R., Ex. 1A, Disability Determination Explanation DIB 14, ECF No. 19-3.  As a security officer at Shaw's, Mallard sat in the office, checked the identification documents of incoming customers, and monitored cameras.  Tr. Oral Hr'g 7.  He also walked around the building to do random checks.  Id.

Mallard worked for Intersection Media for seven years as a sign installer, where he carried a bundle of signs, went to places as instructed, and installed the signs.  Id. at 7-9.  He also worked as a sign installer for Sign Design, Inc., where he did a lot of lifting and climbing with a ladder to install signs.  Id. at 11.  He installed all types of signs, including signs up to 100 pounds.  Id.  Mallard worked as a sign installer through late July 2015.  Id. at 11-12.

### 2.  Physical Impairment

On July 23, 2015, Mallard suffered an injury to his low back while he was working.  Administrative R., Ex. 2F, Inpatient Hospital Records ("Inpatient Hospital Records") 5, ECF No. 19-7.  Mallard was carrying sign templates through a door when the templates hit the top of the door frame and caused his body to twist into a painful posture.  Id.

Since this injury, Mallard has not engaged in any substantial gainful activity. Hearing Decision 3; see also Application Summary 1. Mallard has received constant treatment for his ongoing lower back pain since the accident. Hearing Decision 6-7. He was treated with Percocet, Administrative R., Ex. 1F, Hospital Records 17, ECF No. 19-7, Meloxicam, Administrative R., Ex. 6F, Office Treatment Records 10, ECF No. 19-9, Oxycodone, id. at 11, and Ibuprofen, Administrative R., Ex. 4F, Office Treatment Records 2, ECF No. 19-8.

Mallard also suffered right hip fracture in a motor vehicle accident. Hearing Decision 3; Administrative R., Ex. 3F, Progress Notes ("Progress Notes") 2, ECF No. 19-7. On December 18, 2015, Mallard received treatment for the right hip fracture at Brigham and Women's Hospital. Id. He was discharged on December 20, 2015. Id. at 1. Mallard has a history of an abdominal gunshot wound that happened around 2005. Hearing Decision 3.

### 3. Mental Impairment

Since his gunshot wound around 2005, Mallard has suffered a series of mental illnesses, including posttraumatic stress disorder, depression, and bipolar. Ex. 7F, Office Treatment Records 1, ECF No. 19-9. Since July 23, 2015, Mallard's mental health deteriorated, and his bipolar disorder, depression, anxiety, and posttraumatic stress disorder became exacerbated.

Id. at 1, 5.  The following is a summary of the records
pertaining to the medical treatment, medication management, and
hospitalization related to Mallard's deteriorating mental health
conditions.

### a)  Hospitalization

Mallard was hospitalized and admitted to Arbour Hospital on
November 17, 2015 because of severe depression and suicidal
ideation.  Inpatient Hospital Records 5.  Mallard reported
having bipolar disorder, posttraumatic stress disorder, anxiety,
and depression.  Id.  The hospital record noted that "Mr.
Mallard presented with a mixed state of both depression with
suicidal ideation and pressured hyperverbal elevated statements
about himself."  Id. at 6.  With treatment, Mallard reported an
improvement in his mood and denied suicidal ideation.  Hearing
Decision 7.

### b)  Medication Management by Crystal White

From May 2016 to April 2017, Crystal White, a nurse
practitioner at South Shore Mental Health, managed Mallard's
medications.  Id. at 9-14.  Psychiatric evaluation notes from
Crystal White document, inter alia, that Mallard suffered
symptoms of paranoia, both visual and auditory hallucinations,
depression, anxiety and posttraumatic stress disorder, Ex. 27F,
Office Treatment Records 28-29, ECF No. 19-15, and that he

isolated himself and experienced decreased ability to feel pleasure, id. at 47.

### c)    Treatment by Dr. Daniels

From October 2015 to May 2017, Dr. David Daniels ("Dr. Daniels") at South Shore Mental Health provided regular psychiatric care for Mallard. See Hearing Decision 7-14. Dr. Daniels noted that Mallard reported difficulty with memory and concentration, and that he presented with symptoms including agitation and startle reactions, Ex. 7F, Office Treatment Records 4, ECF No. 19-9, auditory hallucinations, and ongoing panic attacks and nightmares, Administrative R., Ex. 30F, Progress Notes 5, ECF No. 19-16. Dr. Daniels diagnosed Mallard with bipolar disorder and posttraumatic stress disorder. Ex. 7F, Office Treatment Records 5. Dr. Daniels reported that Mallard's symptoms interfered with his ability to concentrate, interact with others, and cope with stress. Ex. 7F, Office Treatment Records 26. Dr. Daniels also concluded that Mallard's impairments affected his ability to work and that he expected them to last six to twelve months. Administrative R., Ex. 18F, Outpatient Hospital Records 12, ECF No. 19-10.

### d)    Evaluation by Dr. Warren

On August 29, 2016, Dr. John Warren ("Dr. Warren"), an advising psychologist to the Disability Determination Services, on initial consideration of Mallard's application, conducted a

medical assessment of Mallard based only on the paper record. Disability Determination Explanation DIB 2-6; see Social Security Handbook § 115.1, https://www.ssa.gov/OP_Home/handbook/handbook.html (last visited November 14, 2019). This record contained, among other things, hospitalization records and the medical opinions from Dr. Daniels and other physicians. Disability Determination Explanation DIB 2-6. Dr. Warren assessed that Mallard would sustain moderate restriction in maintaining social functioning and concentration or persistence. Id. at 13. Dr. Warren concluded that Mallard, despite the above-mentioned restrictions, could perform simple tasks over a routine workday or week with acceptable attention, persistence, and pace, and could sustain the basic demands related to work by supervisors and co-workers. Id. at 13-14. Dr. Warren assessed that Mallard could adapt to routine workplace changes, remain aware of hazards, form basic plans, and travel independently. Id. at 13. Nonetheless, Dr. Warren assessed that Mallard would be unable to interact appropriately with the general public. Id.

### e) Evaluation by Dr. Diaz

On December 2, 2016, Dr. Sandra Diaz ("Dr. Diaz"), an advising psychologist to the Disability Determination Services, on reconsideration of Mallard's application, assessed Mallard's mental health conditions. Administrative R., Ex. 3A, Disability

Determination Explanation 15-17, ECF No. 19-3; see Social
Security Handbook § 115.3,
https://www.ssa.gov/OP_Home/handbook/handbook.html (last visited
November 14, 2019). Dr. Diaz, by making evaluations based on
the evidence of record that she received, agreed with Dr.
Warren's assessment. Ex. 3A, Disability Determination
Explanation 2-9, 17. Dr. Diaz determined, among other things,
that Mallard was "able to sustain the mental demands associated
with carrying out simple tasks over the course of routine
workday/workweek within acceptable attention, persistence, pace
tolerances." Id. at 16. Dr. Diaz also determined that Mallard
is "able to sustain the basic demands associated with relating
adequately with supervisors/co-workers," but is "[u]nable to
interact appropriately with the general public." Id.

### C. The Hearing and Findings of the Hearing Officer

#### 1. The Hearing

Mallard appeared and testified at the hearing, identifying
his impairments as bipolar disorder, post-traumatic stress,
depression, anxiety, lower back pain, and a right hip fracture.
Tr. Oral Hr'g 13-14. Mallard testified that he has experienced
only minimal improvement of his lower back pain with treatment.
Id. at 16. He also rated his lower back pain as a level six or
seven out of ten in severity, where one indicates no pain at all
while ten indicates full severity. Id. at 16-17. Mallard

described ongoing right hip pain, though not as painful as his lower back pain. Id. at 18. Regarding his mental symptoms, Mallard described experiencing panic attacks two or three times a week where his heart races and he feels uneasy and unsteady. Id. at 25-27. He also acknowledged self-isolation in which he would close the shade and stay alone in his room, feeling hopeless. Id. at 29. Mallard testified that he experiences flashbacks of a time when he sustained a gunshot wound to his abdomen. Id. at 30. He also claimed auditory hallucinations. Id. at 31-32.

The vocational expert, Mr. Michael Laraia, was also present at the hearing. Id. at 3. Mr. Laraia testified that an individual with Mallard's age, education, work experience, and residual functional capacity would be able to perform the requirements of light unskilled occupations such as a machine operator (Dictionary of Occupation Titles ("DOT") # 741.685-010), a packager (DOT # 920.687-018) or a cleaner (DOT # 323.687-014). Id. at 39-40; Hearing Decision 17. He also stated, in response to a hypothetical question from Mallard's counsel regarding an individual of Mallard's age, education, and work history who is "unable to maintain concentration and attention over an eight-hour work period such that this person would be off work task for 20% or more of the eight-hour work period" and is "likely be absent from work two or more days per

month," that such an individual cannot perform any kind of employment.  Tr. Oral Hr'g 40-41.

## 2.  Findings of the Hearing Officer

In making factual findings and reaching his conclusion, the hearing officer followed the five-step sequential disability determination process.  Hearing Decision 2-3.  The hearing officer found, under step one of the sequential evaluation process, 20 C.F.R. § 404.1520(b), that Mallard "has not engaged in any substantial gainful activity since July 23, 2015, the alleged onset date" of his disability.  Hearing Decision 3 (citing 20 C.F.R. §§ 404.1571-404.1576).

Second, the hearing officer found that Mallard suffered from the following severe impairments: lower back pain; right acetabular facture treated via manipulation; bipolar disorder; depression; anxiety; and posttraumatic stress disorder.  Id. (citing 20 C.F.R. § 404.1520(c)).

Third, the hearing officer found that Mallard did not have an impairment equal in severity to those listed in section 404, Subpart P, Appendix 1 of chapter 20 of the Code of Federal Regulations.  Id. at 4 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526).

Fourth, the hearing officer found that "[t]he claimant is unable to perform any past relevant work," including past relevant medium skilled work as a sign installer and light

semiskilled work as security guard. Id. at 16 (citing 20 C.F.R. § 404.1565). The hearing officer made no findings as to whether Mallard has any transferable skills. The hearing officer determined that "[t]ransferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills." Id. (citing Soc. Sec. Rul. No. 82-41, 1982 WL 31389 (Soc. Sec. Admin. Jan. 1, 1982); 20 C.F.R. § 404 Subpart P. App. 2).

Fifth, and most important for the subsequent analysis, the hearing officer found that "the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." Id. at 17. Relying on the vocational expert's testimony, the hearing officer found that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." Id. (citing 20 C.F.R. § 404.1569(a)). Accordingly, the hearing officer found that Mallard was "not disabled." Id. at 18.

## II. ANALYSIS

The question before the Court is whether the Commissioner's final decision to deny Mallard disability benefits is supported by substantial evidence. This question hinges on whether substantial evidence supports the hearing officer's conclusion

at step five of the sequential evaluation that Mallard could perform a range of unskilled work despite his mental impairments. Def.'s Mem. 1; Pl.'s Mem. 1; see 20 C.F.R. § 404.1520(a)(4)(v); Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018).

## A.  Standard of Review

Under the Social Security Act, this Court "has the 'power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.'" Martin v. Colvin, No. 12-12345-DPW, 2014 WL 309370, at *9 (D. Mass. Jan. 16, 2014) (Woodlock, J.) (quoting 42 U.S.C. § 405(g)). This Court "review[s] the Commissioner's underlying decision for substantial evidence and conformity to relevant law." Purdy, 887 F.3d at 13 (citing Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001)); see also Ward v. Commissioner of Soc. Sec., 211 F.3d 652, 655 (1st Cir. 2000). "Questions of law, to the extent that they are at issue in this appeal, are reviewed de novo." Wilson v. Astrue, No. 08-40228-FDS, 2010 WL 1379889, at *3 (D. Mass. Mar. 30, 2010) (Saylor, J.) (citing Seavey, 276 F.3d at 9).

"The [hearing officer's] findings of fact are conclusive when supported by substantial evidence, 42 U.S.C. § 405(g), but are not conclusive when supported by ignoring evidence,

misapplying the law, or judging matters entrusted to experts."
Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (citing Da
Rosa v. Secretary of Health & Human Servs., 803 F.2d 24, 26 (1st
Cir. 1986) (per curiam)). "Substantial evidence is 'more than a
mere scintilla,' and means only 'such relevant evidence as a
reasonable mind might accept as adequate to support a
conclusion.'" Biestek v. Berryhill, 139 S. Ct. 1148, 1154
(2019) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197,
229 (1938)). The evidentiary threshold is not high for the
"substantial evidence" standard, and is less stringent than the
"clearly erroneous" standard that the appellate courts use to
review district courts' fact-finding. Dickinson v. Zurko, 527
U.S. 150, 162 (1999). "[T]hough certainly 'more than a
scintilla' of evidence is required to meet the benchmark, a
preponderance of evidence is not." Purdy, 887 F.3d at 13. This
Court "must affirm [the Commissioner's decision], even if the
record could justify a different conclusion, so long as it is
supported by substantial evidence." Rodriguez Pagan v.
Secretary of Health & Human Servs., 819 F.2d 1, 3 (1st Cir.
1987).

It is within the province of the Commissioner -- not this
Court -- to resolve conflicts in the evidence, make credibility
determinations, draw permissible factual inferences, and
ultimately determine the question of disability. See Purdy, 887

F.3d at 13 (quoting Rodriguez v. Secretary of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981) (per curiam)); Cameron v. Berryhill, 356 F. Supp. 3d 186, 191-92 (D. Mass. 2019) (citing Ortiz v. Secretary of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam)); Caney v. Astrue, No. 11-30245-KPN, 2012 WL 3151245, at *1 (D. Mass. Aug. 1, 2012) (Neiman, M.J.) (citing Rodriguez, 647 F.2d at 222).

This Court must rely on the hearing officer's reasoning and factual findings when reviewing his decision instead of any post hoc rationalizations. See Polanco-Quinones v. Astrue, 477 Fed. Appx. 745, 746 (1st Cir. 2012) (per curiam) (concluding that court may not affirm agency action based on grounds other than those offered by agency); Wilson, 2010 WL 1379889, at *7 ("Long-standing principles of administrative law require us to review the [hearing officer's] decision based on the reasoning and factual findings offered by the [hearing officer] -- not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking.") (quoting Bray v. Commissioner of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009). Accordingly, this Court considers the Commissioner's arguments only to the extent that the hearing officer's decision reflects that reasoning.

B.   **Statutory and Regulatory Framework**

"An individual is not entitled to [Social Security disability insurance benefits] unless he or she is 'disabled' within the meaning of the Social Security Act." Wilson, 2010 WL 1379889, at *3 (citing 42 U.S.C. §§ 423(a)(1)(A)-(d)). "Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Id. (citing 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)). "The impairment must be severe enough to prevent [claimant] from performing not only past work, but any substantial gainful work existing in the national economy." Id. (citing 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1560(c)(1)).

The Commissioner uses a sequential five-step evaluation process to determine whether a claimant is "disabled" within the meaning of the Social Security Act. Cameron, 356 F. Supp. 3d at 192 (citing 20 C.F.R. § 404.1520(a)(4)). These five steps are:

> 1) if the applicant is engaged in substantial gainful work activity, the application is denied; 2) if the applicant does not have, or has not had within the relevant time period, a severe impairment or combination of impairments, the application is denied; 3) if the impairment meets the conditions for one of the 'listed' impairments in the Social Security regulations, then the application is granted; 4) if the applicant's 'residual functional capacity' is such that he or she can still perform past relevant work, then the application is denied; 5) if the applicant,

> given his or her residual functional capacity,
> education, work experience, and age, is unable to do
> any other work, the application is granted.

_Seavey_, 276 F.3d at 5; _see also_ 20 C.F.R. § 404.1520(a)(4).

"'The [claimant] has the burden of production and proof at the first four steps of the process,' and the burden shifts to the Commissioner at step five to 'com[e] forward with evidence of specific jobs in the national economy that the applicant can still perform.'" _Wilson_, 2010 WL 1379889, at *4 (alteration in original) (quoting _Freeman_ v. _Barnhart_, 274 F.3d 606, 608 (1st Cir. 2001)).

### C. Mallard's Arguments

Mallard asks this Court to reverse the Commissioner's denial of disability benefits for five reasons, all of which relate to evidence of his mental health conditions. First, he argues that the hearing officer failed to consider important medical evidence regarding his mental health. Pl.'s Mem. 7. Second, Mallard argues that the hearing officer failed fully to discuss and to consider the vocational expert's testimony. _Id._ at 11. Third, Mallard argues that the hearing officer accorded improper weight to his non-treating physicians while failing to accord proper weight to the opinion of his treating physician. _Id._ at 8-10. Fourth, Mallard argues that the hearing officer failed properly to credit his personal testimony. _Id._ at 8-9. Finally, Mallard argues that the hearing officer failed to take

into consideration his treating physicians' medical evaluations regarding commuting challenges. Id. at 10. This memorandum addresses each of these claims in turn.

### 1. Failure to Consider Important Evidence of Claimant's Mental Health Conditions

Mallard contends that the hearing officer erred by completely ignoring record evidence, especially his deteriorating mental health condition following the work accident on July 23, 2015. Pl.'s Mem. 7. Specifically, Mallard argues that the hearing officer ignored the fact that he was hospitalized in Arbour Hospital in November 2015, and that he experienced paranoia, hallucinations, depression, anxiety, and post-traumatic stress disorder, as reflected in Notes from May 16, August 8, and October 3, 2016. Id. This argument lacks merit.

A Social Security hearing officer must consider the totality of the medical record, including the opinion of every medical source. 20 C.F.R. § 404.1527(c) ("Regardless of its source, [the hearing officer] will evaluate every medical opinion [he or she] receive[s].").; see also Soc. Sec. Rul. No. 96-5p, 1996 WL 374183, at *1 (Soc. Sec. Admin. Jul. 2, 1996) ("[O]pinions from any medical source about issues reserved to the Commissioner must never be ignored . . . ."). The hearing officer must expressly provide good reasons for rejecting or

discounting the opinions of any source. See Johnson v. Astrue, 338 Fed. Appx. 3, 6-8 (1st Cir. 2009) (per curiam) (holding that the hearing officer failed to provide good cause in discounting treating physician's opinion and claimant's testimony); Lauxman v. Astrue, 321 Fed. Appx. 766, 769 (10th Cir. 2009) (citing Doyal v. Barnhart, 331 F.3d 758, 764 (10th Cir. 2003)). Nonetheless, "[w]hen the [hearing officer] does not need to reject or weigh evidence unfavorably in order to determine a claimant's [residual functional capacity], the need for express analysis is weakened." Lauxman, 321 Fed. Appx. at 769 (citing Howard v. Barnhart, 379 F.3d 945, 947 (10th Cir. 2004)); see also Maxwell v. Astrue, 268 Fed. Appx. 807, 811 (10th Cir. 2008) (holding that the hearing officer did not err in not explicitly discussing what weight he gave to the medical evidence where he neither rejected nor treated unfavorably that medical evidence).[2]

---

[2] The First Circuit has not provided relevant guidance on the need for explicit discussion of evidence that the hearing officer neither rejects nor treats unfavorably, although the First Circuit did point out that "[the hearing officer] is not required to expressly refer to each document in the record," Rodriguez v. Secretary of Health & Human Servs., 915 F.2d 1557, 1990 WL 152336, at *1 (1st Cir. 1990) (per curiam) (table). This Court follows the jurisprudence of the Tenth Circuit in this regard for its persuasiveness and consistency. See Akers v. Colvin, 556 Fed. Appx. 754, 758 (10th Cir. 2014); Wilson v. Colvin, 541 Fed. Appx. 869, 872 (10th Cir. 2013); Shiplett v. Astrue, 456 Fed. Appx. 730, 734 (10th Cir. 2012); Leach v. Astrue, 470 Fed. Appx. 701, 704 n.1 (10th Cir. 2012).

In _Lauxman_, the plaintiff sought judicial review of the
Commissioner's decision denying his application for disability
insurance benefits and supplemental security income. 321 Fed.
Appx. at 768. Specifically, the plaintiff in _Lauxman_ contended
that the hearing officer "improperly evaluated the opinion of
her non-treating, consultative physician." _Id._ The court
disputed the plaintiff's assumption that the hearing officer
rejected the non-treating physician's opinion, and concluded
that where "the [hearing officer] neither rejected [the
doctor's] opinion nor treated it unfavorably, there was no need
to provide specific reasons for doing so." _Id._ at 769.

The heart of Mallard's argument here is that the hearing
officer failed properly to evaluate important medical evidence
regarding his mental impairments, particularly the evidence that
Mallard was admitted to Arbor Hospital on November 17, 2015, and
medical notes from May 16, August 8, and October 3, 2016. As in
_Lauxman_, here the hearing officer neither rejected nor weighed
unfavorably these sources of medical evidence. Here, the
hearing officer recognized Mallard's deteriorating mental health
condition following the work accident on July 23, 2015, Hearing
Decision 15, although he based his findings on the assessments
of Drs. Warren and Diaz. _Id._ Both of these sources had
considered the hospitalization record from Arbour Hospital. _See_
Disability Determination Explanation DIB 4-5; Disability

Determination Explanation 3.  It thus cannot be said that the hearing officer completely failed to consider this evidence.

Both Drs. Warren and Diaz found that Mallard suffered from post-traumatic stress disorder symptoms, irritability, paranoia, and auditory hallucinations.  Hearing Decision 15; Disability Determination Explanation DIB 7; Ex. 3A, Disability Determination Explanation 17.  These findings were consistent with Nurse Practitioner Crystal White's evaluation notes from May 16, 2016, Administrative R., Ex. 27F, Office Treatment Records 28-29, ECF No. 19-15, evaluation notes from August 8, 2016, id. at 47, and evaluation notes from October 3, 2016, id. at 58-59.  These evaluation notes documented that Mallard had ongoing symptoms of "paranoia, hallucinations, depression, anxiety and PTSD."  Id. at 28-29; see also id. at 47, 58-59.

Accordingly, because the hearing officer neither rejected nor treated unfavorably the medical evidence regarding Mallard's hospitalization, he did not err in failing to provide specific reasons for its exclusion from his analysis.

## 2.  Failure Fully to Consider Vocational Expert's Testimony

Mallard contends that the hearing officer failed fully to discuss or to consider the testimony of the vocational expert, Mr. Laraia, by failing to discuss the estimated inability to work 20% of each day and two unexcused absences per month.

Pl.'s Mem. 11; Tr. Oral Hr'g 41. Mallard's argument lacks merit.

On a claim for Social Security disability benefits, the Commissioner may, by applying the Medical Vocational Guidelines or by adducing testimony from a vocational expert, make the step five determination whether there exist significant numbers of jobs in the national economy that claimant can perform. Vazquez v. Secretary of Health & Human Servs., 29 F.3d 619, 1994 WL 285769 (1st Cir. 1994) (per curiam) (table) (upholding the hearing officer's decision in making the step five determination by using the vocational expert's testimony and the Medical Vocational Guidelines). In order for a vocational expert's testimony to constitute substantial evidence, the vocational expert's assumptions must be supported by substantial evidence in the record. Garay v. Secretary of Health & Human Servs., 46 F.3d 1114, 1995 WL 54077 (1st Cir. 1995) (per curiam) (table).

In Caney, the plaintiff alleged that the Commissioner's decision to deny him Social Security disability insurance benefits was error because the hearing officer disregarded the hypothetical question posed by his counsel. 2012 WL 3151245, at *4. Specifically, the plaintiff's counsel inquired about the "employment opportunities available to an individual who 'appear[s] to be off-task at least 25 percent of the workday.'" Id. (alteration in original). Because the hearing officer found

the hypothetical question unsupported by the record, the hearing officer did not adopt those limitations posed by the plaintiff's counsel. Id. The court, ruling that those limitations were unsupported by substantial evidence in the record, upheld the hearing officer's decision. Id.

The essence of Mallard's argument is that the hearing officer failed fully to consider and to address his counsel's hypothetical question regarding the potential for him to be "off work task for 20% or more of the eight-hour work period" and "absent from work for two or more days per month." Tr. Oral Hr'g 41; Pl.'s Mem. 11. A close examination of the medical record, however, does not support those hypothetical questions raised by plaintiff's counsel during the vocational expert's testimony. The medical record contains no evidence as to the amount of time Mallard potentially would be unable to work due to either his mental impairments or his physical impairments. See Caney, 2012 WL 3151245, at *4 (rejecting claimant's argument that the hearing officer improperly disregarded the limitations proposed by claimant's counsel because no evidence in the medical record supported those limitations). Accordingly, this argument is unpersuasive.

3. **Failure to Accord Proper Weight to the Treating and Non-treating Source Medical Evidence**

Mallard's argument regarding the treating source medical opinion is inherently related to his argument regarding the non-treating source medical opinion. In essence, Mallard focuses his challenge on the relative weights that the hearing officer accorded to each source.

### a) Non-treating Medical Opinion

Mallard argues that the hearing officer erred in according great weight to the assessments of Drs. Warren and Diaz on the grounds that these assessments "[we]re conducted in an academic vacuum where real world exigencies [we]re not evaluated or taken into consideration." Pl.'s Mem. 9-10. Mallard's argument lacks merit.

"It is within the [Commissioner's] domain to give greater weight to the testimony and reports of medical experts who are commissioned by the [Commissioner]." Keating v. Secretary of Health & Human Servs., 848 F.2d 271, 275 n.1 (1st Cir. 1988) (per curiam) (citing Lizotte v. Secretary of Health & Human Servs., 654 F.2d 127, 130 (1st Cir. 1981)); see also Crowe v. Saul, No. 18-10490-JCB, 2019 WL 4071979, at *8 (D. Mass. Aug. 29, 2019) (Boal, M.J.) (citing Soc. Sec. Rul. No. 96-6p, 1996 WL 374180, at *3 (Soc. Sec. Admin. Jul. 2, 1996)) ("In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the

opinions of treating or examining sources."). "The opinions of 'non-treating, non-examining sources may override treating doctor opinions, provided there is support for the result in the record.'" Harding v. Colvin, No. 12-11437-DJC, 2015 WL 8082386, at *11 (D. Mass. Dec. 7, 2015) (Casper, J.) (quoting Hill v. Colvin, No. 13-cv-11497-DJC, 2015 WL 132656, at *9 (D. Mass. Jan. 9, 2015) (Casper, J.)).

In Davila v. Berryhill, the plaintiff appealed a final decision by the Commissioner denying his application for disability insurance benefits. No. 17-cv-12212-ADB, 2018 WL 6499862, at *1 (D. Mass. Dec. 11, 2018) (Burroughs, J.). He challenged the hearing officer's decision to give the treating physician's opinion less weight than the non-treating physician's opinion. Id. In his decision, the hearing officer made reference to and examined the claimant's daily activities, and explained how those daily activities conflicted with the treating physician's opinion. Id. at *2. The court then held that because "[the hearing officer] provided good reasons for the little weight he gave the treating physicians' opinions, and the significant weight he placed on the state medical consultants' opinions," there was no reversible error. Id. at *1-2.

As in Davila where the hearing officer provided good reasons for according great weight to state-commissioned medical

consultants' opinions, here the hearing officer offered good reasons for allocating great weight to the assessments of Drs. Warren and Diaz, noting that "[t]heir assessments allow for the claimant's PTSD symptoms, irritability, paranoia, and auditory hallucinations by limiting his contact with the general public." Hearing Decision 15. The hearing officer further noted that the findings of Drs. Warren and Diaz "are consistent with the record as a whole" -- for example, consistent with medication management notes of Crystal White which documented findings of "impaired memory and concentration with complaints of racing and paranoid thoughts." Id.

Given that substantial evidence supports the decision to accord great weight to Dr. Warren's and Dr. Diaz's assessments, Mallard's argument here falls short.

### b) Treating Source Medical Opinion

It is here the Commissioner's decision comes a cropper. Mallard argues that the hearing officer improperly discounted the opinions of Dr. Daniels, Mallard's treating physician. Pl.'s Mem. 8; Compl. 3. The hearing officer discounted Dr. Daniels' opinions merely by stating that Dr. Daniels "does not meaningfully address the claimant specific functional [sic] and does not establish disability within the meaning of the Social Security Administration's regulations." Hearing Decision 15.

This is an insufficient rationale for discounting the opinions of Mallard's long-time treating physician.

Mallard applied for benefits prior to March 27, 2017, when the Social Security Administration's rule altering the standard for evaluating treating source opinions became effective. 82 Fed. Reg. 5,844 (Jan. 18, 2017). Therefore, this Court considers Mallard's challenge under the former standard. <u>See id.</u>; 20 C.F.R. § 404.1527 ("For claims filed (see § 404.614) before March 27, 2017, the rules in this section [containing the treating physician rule in § 404.1527(c)(2)] apply. For claims filed on or after March 27, 2017, the rules in § 404.1520c apply."); <u>Castejón</u> v. <u>Commissioner of Soc. Sec.</u>, No. 17-2386-BJM, 2019 WL 4017364, at *8 n.6 (D.P.R. Aug. 26, 2019) (recognizing that former treating physician rule applies as plaintiff filed for Social Security benefits before March 27, 2017).

Under § 404.1527(c)(2), a hearing officer must "'always give good reasons' for the weight [he] gives a treating source opinion." <u>Soto-Cedeño</u> v. <u>Astrue</u>, 380 Fed. Appx. 1, 1 (1st Cir. 2010) (per curiam) (citing 20 C.F.R. § 404.1527(d)(2)). "Generally, a treating source's opinion on the nature or severity of impairments is given controlling weight." <u>McNelley</u> v. <u>Colvin</u>, No. 15-1871, 2016 WL 2941714, at *1 (1st Cir. Apr. 28, 2016) (citing 20 C.F.R. § 404.1527(c)(2)); <u>see also</u> <u>Leahy</u> v.

Raytheon Co., 315 F.3d 11, 20 (1st Cir. 2002) ("The treating physician rule . . . requires that the [hearing officer] weigh more heavily the opinions of the claimant's treating physicians in determining his or her eligibility for benefits."); Soc. Sec. Rul. No. 96-2p, 1996 WL 374188, at *1 (Soc. Sec. Admin. Jul. 2, 1996). Where a treating physician's opinion is not supported by progress notes or clinical or laboratory findings, however, it is not entitled to controlling weight. Ramos v. Barnhart, 119 Fed. Appx. 295, 296 (1st Cir. 2005) (per curiam). The hearing officer "may reject a treating physician's opinion as controlling if it is inconsistent with other substantial evidence in the record, even if that evidence consists of reports from non-treating doctors." Castro v. Barnhart, 198 F. Supp. 2d 47, 54 (D. Mass. 2002) (Swartwood, M.J.) (citing Rosario v. Apfel, 85 F. Supp. 2d 62, 67 (D. Mass. 2000) (Ponsor, J.)).

In determining not to accord controlling weight to a treating physician's opinion, a hearing officer must do more than state conclusions, and must provide specific reasons for doing so. Soc. Sec. Rul. No. 96-2p, 1996 WL 374188, at *5; see Morales v Commissioner of Soc. Sec., 2 Fed. Appx. 34, 36 (1st Cir. 2001) (per curiam) (holding that hearing officer provided sufficient reasoning for not according controlling weight to treating physician's opinion where the hearing officer cited and

analyzed conflicting medical evidences in the record); accord
Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014); Cain v.
Commissioner of Soc. Sec. Admin., 777 Fed. Appx. 408, 409 (11th
Cir. 2019) (per curiam) (concluding that hearing officer must
state with particularity and clearly articulate good cause for
discrediting a treating physician's opinion). "[A hearing
officer] can satisfy the 'substantial evidence' requirement by
setting out a detailed and thorough summary of the facts and
conflicting clinical evidence, stating his interpretation
thereof, and making findings." Garrison, 759 F.3d at 1012
(citation omitted). In contrast, a hearing officer errs in
rejecting the treating physician's opinion where he provides no
reasoning or explanation for his conclusion. Polanco-Quinones,
477 Fed. Appx. at 746; see also Garrison, 759 F.3d at 1012-13
(holding that "a [hearing officer] errs when he rejects a
medical opinion or assigns it little weight while doing nothing
more than ignoring it, asserting without explanation that
another medical opinion is more persuasive, or criticizing it
with boilerplate language that fails to offer a substantive
basis for his conclusion").

A treating physician's failure to assess a claimant's
specific functional limitations is a good reason to discount
that opinion. See Grover v. Colvin, No. 2:15-cv-204-JHR, 2016
WL 183645, at *9 (D. Me. Jan. 14, 2016); Fothergill v. Colvin,

No. 2:15-cv-143-JHR, 2016 WL 183643, at *4 (D. Me. Jan. 13, 2016) (concluding that the hearing officer supplied good reasons for rejecting treating a physician's opinion on the ground that the opinion failed to identify any specific functional limitations); Thompson v. Colvin, No. 5:13-cv-275, 2014 WL 7140575, at *9 (D. Vt. Jan. 13, 2016) (concluding that hearing officer gave good reason for according little weight to treating physician's opinion because of failure to include any specific functional limitations).

That said, though the hearing officer claimed that he accorded less weight to Dr. Daniels' evaluation on the ground that the doctor failed meaningfully to address Mallard's specific functional limitations, the hearing officer did no more than simply state his conclusion. See Hearing Decision 15. The hearing officer did not interpret Dr. Daniels' opinion nor did he cite any medical evidence or opinion with which it conflicted -- far short of meeting the standard in Morales, 759 F.3d at 1012 (concluding that hearing officer provided adequate reason for not giving controlling weight to treating physician when hearing officer cited and analyzed conflicting medical evidence).

Accordingly, the Court rules the hearing officer erred in discounting Dr. Daniels' opinion without clearly and articulately providing good reasons for doing so, and this error

requires remand. See Cain, 777 Fed. Appx. at 409 (holding that
hearing officer committed reversible error by failing to state
with particularity good cause for discrediting treating
physician's opinion); Walker v. Commissioner of Soc. Sec.
Admin., 911 F.3d 550, 553 (8th Cir. 2018) (holding that failure
to explain with specificity the reason for rejecting treating
physician's opinion is reversible error).

###### 4. Failure Properly to Credit Claimant's Testimony

Mallard argues that the hearing officer erred in
discounting parts of his own testimony. Pl.'s Mem. 8-9. The
hearing officer explained that "[t]o the extent the claimant
testified to limitations greater than I have found, I find that
testimony not consistent with the medical treatment record and
other evidence above." Hearing Decision 15. Mallard's argument
is compelling because the hearing officer's bald conclusion
fails to provide any supporting reasoning.

"Credibility is for [the hearing officer] to judge . . . so
long as his determination is supported by substantial evidence."
Foley v. Astrue, No. 09-10864-RGS, 2010 WL 2507773, at *7 (D.
Mass. June 17, 2010) (Stearns, J.) (citing Acevedo Ramirez v.
Secretary of Health, Educ. & Welfare, 550 F.2d 1286, 1286 (1st
Cir. 1977)); see also Buckley v. Berryhill, No. 1:16-cv-10562-
GAO, 2017 WL 3207059, at *3 (D. Mass. Jul. 28, 2017) (O'Toole,
J.) ("[D]eciding issues of credibility is the 'prime

responsibility' of the [hearing officer]." (quoting Rodriguez v. Celebrezze, 349 F.2d 494, 496 (1st Cir. 1965))). The hearing officer "is entitled to disbelieve subjective complaints of disabling pain in the face of contrary medical evidence." Tetreault v. Astrue, 865 F. Supp. 2d 116, 126 (D. Mass. 2012) (Wolf, J.) (citing Avery v. Secretary of Health & Human Servs., 797 F.2d 19, 21 (1st Cir. 1986)).

The hearing officer provides clear reasons for discounting a claimant's testimony where the hearing officer examines the objective medical evidence that does not support the claimant's testimony, the inconsistencies between the claimant's testimony and medical opinions in the record, and the inconsistencies between the claimant's alleged symptoms and reported daily activities. See Poissant v. Barnhart, 74 Fed. Appx. 72, 72 (1st Cir. 2003) (per curiam) (holding that hearing officer's finding of discrepancies between the claimant's testimony and the objective medical evidence supports the hearing officer's conclusion that the claimant was not entirely credible); see also George v. Berryhill, 727 Fed. Appx. 287, 290 (9th Cir. 2018) (mem.); compare Tetreault, 865 F. Supp. 2d at 126 (holding that hearing officer properly discredited claimant's testimony where the hearing officer explained specific factors damaging claimant's creditability), with Kosirog v. Berryhill, 354 F. Supp. 3d 835, 845 (M.D. Tenn. 2019) (Young, J.) (holding that

hearing officer failed properly to evaluate claimant's testimony where the hearing officer only summarized the evidence in the record without explaining how the evidence contradicted claimant's symptoms).

Unlike the hearing officer in Tetreault, who not only summarized the medical evidence that conflicted with claimant's testimony but also provided and explained specific factors damaging claimant's creditability, here the hearing officer did nothing more than summarize the medical evidence in the record without explaining how it contradicted Mallard's testimony. Hearing Decision 15-16. Although his summary is comprehensive and detailed, he did not explain his reasoning -- why the evidence contradicts Mallard's testimony. See Kosirog, 354 F. Supp. 3d at 845 (holding that "[t]he hearing officer should have identified specific medical evidence and non-medical facts to demonstrate inconsistencies in [the claimant's] testimony"). Such a failure warrants remand. See id. at 845 (holding that failure properly to evaluate claimant's testimony warrants remand).

### 5. Failure to Consider the Medical Evaluation Regarding Mallards's Commuting Difficulty

Mallard argues that the hearing officer failed to consider Mallard's commuting difficulty associated with his mental impairments. Pl.'s Mem. 9-10; Compl. 3. Mallard argues that

with routine stress, "[c]ommuting to work is, by its very nature, stressful." Pl.'s Mem. 10; Administrative R., Ex. 16F, Impairment Questionnaire 2, ECF No. 19-10. This is a compelling argument.

"Congress, tightening the definition of disability, eliminated consideration of travel difficulties when those difficulties were extrinsic to the claimed disability . . . ." Lopez Diaz v. Secretary of Health, Educ. & Welfare, 585 F.2d 1137, 1140-42 (1st Cir. 1978) (citing Lafont v. Secretary of Health, Educ. & Welfare, 363 F. Supp. 443, 444 (E.D. La. 1973)). When considering whether a disability would cause commuting difficulties to an extent that would prevent a claimant from employment in the national economy, a hearing officer must consider "a hypothetical claimant, suffering from the same standing and walking impairments as this claimant, whose place of residence is unknown but reasonably close to the worksite, and who is free to choose a suitable form of conveyance from among the different means of transportation, public or private, that are normally available to the national population in travelling to and from work." Id. at 1142. If the hypothetical claimant's disabilities "would not in and of themselves prevent him or her from traveling by some normally available means of transportation, either public or private, to work which exists in the national economy," a conclusion of non-disability may be

warranted.  Id. (internal quotation marks omitted).  On the contrary, if the disabilities would by themselves prevent claimant from commuting via normally available means of transportation, "then disability benefits are appropriate for the actual claimant."  Id.

A close examination of the hearing officer's decision leads to the conclusion that he did not conduct any such inquiry. There is no analysis whether a hypothetical claimant similarly situated to Mallard would be precluded from commuting to work by his or her disabilities.  See Hearing Decision 1-18.  No evidence is cited to support the conclusion that Mallard, despite the commuting difficulties caused by his mental impairment, is able to commute to work via normal means of transportation available to the national population.  Id. Accordingly, a lack of substantial evidence in this regard constitutes reversible error on the part of the Commissioner.

## III. CONCLUSION

For the reasons discussed above, the Court DENIED the Commissioner's motion to affirm the decision, ECF No. 24, and GRANTED Mallard's motion to reverse, ECF No. 21.  The Commissioner's decision is VACATED and the matter is REMANDED for further proceedings consistent with this opinion.

**SO ORDERED.**

William G. Young

WILLIAM G. YOUNG
DISTRICT JUDGE